NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL I. WERBLER, | : |
| Plaintiff, | : |
| | : Civ. No. 05-3528 (AET) |
| v. | : |
| | : **Memorandum and Order** |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, | : |
| Defendant. | : |

THOMPSON, U.S.D.J.

INTRODUCTION

    This matter comes before the Court on Defendant Horizon Blue Cross Blue Shield of New Jersey's motion for summary judgment and attorneys' fees. The Court has decided this motion after reviewing the submissions of the parties. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons stated below, Defendant's motion for summary judgment will be granted, but attorneys' fees will be denied.

BACKGROUND

    In March of 2004, Plaintiff Daniel I. Werbler submitted a request to Defendant, his insurance provider, for pre-certification of medical coverage for surgery for his daughter, Ms. Werbler. Ms. Werbler was fifteen years old at the time and suffering from a "Class III Maocclusion": a condition whereby the lower jaw protrudes outward, and is misaligned with the upper jaw. Defendant denied pre-certification, determining the procedure was not "medically necessary." Ms. Werbler proceeded with the "LeFort I Osteotomy and Bilateral Saggital

Mandibular Osteotomies" surgery ("LeFort surgery") without coverage.  Post-surgery, Plaintiff attempted again to receive coverage on her behalf, which Defendant denied again for lack of medical necessity.

Under Defendant's Plan, a claimant may seek review of a denial of coverage via a three level appeal process.  At the "First Level Appeal," the claimant may discuss the coverage decision directly with the physician who issued the denial.  (See Def.'s Mot. Summ. J. Ex. B at 38-43.)  At a "Second Level Appeal," Defendant selects a panel of physicians to review the case, who were not involved in the initial determination.  (Id.)  As a final appeal, the claimant may request an "External Appeal" conducted before an independent qualified physician selected by an Independent Utilization Review Organization ("IURO") "under the auspices of the New Jersey Department of Health and Human Services."  (See Def.'s Mot. Summ. J. at 4.)  This group is unaffiliated with Defendant, has no financial stake in the outcome of the decision, and as such is free of potential conflicts of interest.

After Defendant rejected Plaintiff's claim post-surgery, Plaintiff appealed the decision to the second and third level appeals, both of which concurred with the denial.  (See Def.'s Mot. Summ. J. Ex. C; Ex. E.)  Defendant's Plan sets forth specific criteria for assessing the medical necessity of surgeries like the one Ms. Werbler underwent.  Defendant's Plan states that for such a surgery to be medically necessary the patient must exhibit "significant clinical functional impairment."  (See Def.'s Mot. Summ. J. Ex. C at 3.)  Defendant's Plan, in assessing a medical necessity, takes into account whether the patient has been able to function over a prolonged period of time with the condition.  (Id.)  Further, Defendant's Plan clearly states that if the predominating motivation behind the surgery is the appearance of the patient, the surgery will not

be reimbursable.  (Id. at 4.)

At each level of appeal, the reviewers denied coverage stating the surgery was not medically necessary.  Several reviewers determined that the primary motivation for the surgery was to correct esthetic concerns of Ms. Werbler.  One reviewing committee cited statements by a treating physician of Ms. Werbler, Dr. Sussman, who indicated the patient was "very displeased with her resultant facial appearance [caused by the condition] . . . this leaves the patient with an esthetically compromised facial appearance.  Surgical reposition of the jaw is desirable to improve facial esthetics and dental bite." (See Def.'s Mot. Summ. J. Ex. C 5-6.)

Other evidence before the reviewers included the admitting Hospital's "Pre Admission Testing and Post Surgery Procedure Record" for Ms. Werbler, filled out in the days immediately prior to and after the surgery.  (Def.'s Reply Ex. 1.)  Within that form, shortly before the date of surgery, under prior medical history, the interviewing physician noted that Ms. Werbler "denie[d] any serious illnesses or medical problems."  (Id.)

Plaintiff also provided the appeal committees the opinion of another treating physician, Dr. Baum, who stated Ms. Werbler had breathing difficulties, chewing problems and a bilateral cross bite.  Dr. Baum also stated that the surgery corrected these conditions and allowed her to breath and chew normally.

In June 2005, Plaintiff sued Defendant in state court to recover his medical expenses under Defendant's Plan which is governed by ERISA.  Defendant removed the action to this Court, and brought this motion for summary judgment asserting that the denial of coverage should stand as a matter of law and that Defendant is entitled to attorneys' fees pursuant to Section 502(g), 29 U.S.C. § 1132(g).

DISCUSSION

A.  Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). Only evidence that would be admissible at trial will be considered. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999). If the nonmoving party would bear the burden of persuasion at trial, the moving party may discharge this prima facie burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case." Padillas, 186 F.3d at 414 (quoting Celotex, 477 U.S. at 322). To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

B.  Standard of Review Under ERISA

Where an ERISA plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the decision to deny benefits is reviewed under the arbitrary and capricious standard. McLeod v. Hartford Life & Accident Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Under the arbitrary and capricious standard, the Court may overturn Defendant's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Id. (quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)). Under this standard of review, "the court is not free to substitute its own judgement for that of the [Defendant] in determining eligibility for plan benefits." Abnathya, 2 F.3d at 45. Because the Defendant's Plan gave an unaffiliated physician assigned by the IURO full discretion to determine eligibility for benefits, the Court will apply the arbitrary and capricious standard of review. The evidence does not warrant the application of a "heightened arbitrary and capricious" standard of review under Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387-88 (3d Cir. 2000).

C.   Analysis

Defendant contends that its decision to deny Plaintiff benefits was supported by substantial evidence. In response, Plaintiff argues that Defendant's decision was arbitrary and capricious because Defendant ignored the findings of Dr. Baum, Ms. Werbler's treating physician.

Every review, from the initial denial throughout Plaintiff's appeal, concluded that Ms. Werbler's surgery was not medically necessary. On February 27, 2006, Plaintiff received a letter report from the level two internal appeal committee upholding the initial decision to deny

benefits.  (See Def.'s Mot. Summ. J. Ex. C.)  The internal appeal acknowledged Dr. Baum findings that Ms. Werbler had chewing difficulty, and "was a mouth breather due to her skeletal deformity."  The committee also noted that Dr. Baum found she suffered from "psychological trauma" because of her deformity.  Apparently, however, the committee discounted Dr. Baum's opinions as unsupported by the record which they asserted did "not reveal any history of significant clinical impairment, such as breathing difficulties, sleep apnea, speech problems, muscular sensitivity, eating and digestive disorders, pain on chewing . . ."  This decision appears to be supported by the record, which, just prior to the surgery indicates that Ms. Werbler "denie[d] any serious illnesses or medical problems."  (Def.'s Reply Ex. 1 at 8.)  The committee also noted that Dr. Sussman, a prior treating physician, justified surgical repositioning of Ms. Werbler's jaw to "improve facial esthetics and dental bite."  Finally, the committee cited a conclusion by an independent medical expert, Board Certified in Dentistry/Oral and Maxillofacial Surgery who agreed that the surgery was "not medically necessary," but was rather a case were the patient was "esthetically compromised."  Although the independent medical expert did not personally meet with Ms. Werbler, he reviewed various records and photographs.

The final appeal, conducted by a physician selected by the IURO, also concurred with the Defendant's denial of coverage.  The reviewing physician, a doctor of dental surgery, Board Certified in Oral and Maxillofacial Surgery, found that the evidenced tended to suggest that Ms. Werbler was "not a habitual mouth breather," as claimed by Dr. Baum.  The physician also found that her maxilla and mandible (the upper and lower jaw) still had a "functional relationship."  Therefore, the physician concluded the "documentation fails to justify a finding of medical necessity in this case."

The Court notes that it cannot substitute its own judgment of eligibility for benefits for that of Defendant under the applicable standard of review. Abnathya, 2 F.3d at 45. After its review of the record, the Court is unable to conclude that Defendant's decision was unreasonable or unsupported by the record. Defendant considered each of Plaintiff's submissions appealing its decision, and at each level the reviewers gave reasons for their findings based on evidence in the record. Contrary to Plaintiff's assertion, Defendant was not bound by the opinion of one of Plaintiff's treating physicians, especially in light of the differing opinions provided by a prior treating physician and an independent medical expert. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003) (holding "that plan administrators are not obliged to accord special deference to the opinions of treating physicians"). Sufficient evidence from medical experts and Ms. Werbler's prior medical history supported Defendant's decision to deny benefits. As a result, the Court grants summary judgment to Defendant.

    D.    <u>Standard for Awarding Attorneys' Fees Under ERISA</u>

Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), provides, in pertinent part, that a court "in its discretion may" award "reasonable attorneys' fees and costs of actions to either party." Five policy factors guide this determination: "(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending party; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position." Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983). In general, "there is no presumption that a successful plaintiff in an ERISA suit should receive an award in the absence of exceptional circumstances." See McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.,

33 F.3d 253, 254 (3d Cir. 1994).

  E. Analysis

In evaluating whether to award attorneys' fees, the Third Circuit has directed that a court "articulate its analysis and conclusions as it considers each of the five Ursic factors." See McPherson, 33 F.3d at 254. In keeping with this instruction, the Court will address each factor in turn.

  1. The Offending Party Lacks Culpability or Bad Faith

This factor militates for an award of attorneys' fees only if the conduct of the losing party is "blameable; censurable . . . ; involving a breach of a legal duty or the commission of a fault . . . something more than simple negligence." Id. at 257. A party need not have a sinister motive, malicious or guilty purpose to satisfy this prong of the analysis, however, "[a] party is not culpable merely because it has taken a position that does not prevail in litigation." Id.

Here, Defendant has pointed to no behavior by Plaintiff that amounts to a "blameable or censurable act." Ultimately Defendant made its decision to deny coverage based on an interpretation of the medical data, and Plaintiff disputed its accuracy. Plaintiff did no more than seek judicial redress for what he believed was an arbitrary and capricious decision by Defendant. This, in and of itself, does not constitute "a commission of a fault." Id. (stating "a party is not culpable merely because it has taken a position that did not prevail in litigation").

  2. Ability of the Offending Parties to Satisfy an Award of Attorneys' Fees

There has been no showing by the Defendant that Plaintiff could satisfy an award of attorneys' fees, therefore this factor is given no weight.

  3, 4. Deterrent Effect of an Attorneys' Fees Award and Benefit Conferred on

<u>Members of the Pension Plan</u>

The lack of culpability on Plaintiff's part makes deterrence, in this case, inappropriate. See, e.g., <u>Small v. First Reliance Standard Life Ins. Co.</u>, No. 02-3744, 2005 WL 1041198, at *2 (E.D. Pa. May 4, 2005) ("Considering Defendants did not act with sufficient culpability to award attorneys' fees, a deterrent is neither necessary nor appropriate."). Further, because the benefit from this case will run exclusively to Defendant and will not confer benefits on other claimants or providers, this factor is of neutral impact.

<u>5.     Relative Merits of the Parties' Positions</u>

Lastly, the respective merits of the parties' positions only slightly favor awarding attorneys' fees to Defendant. However, Plaintiff proffered a good faith legal argument that Defendant ignored the findings of a treating physician. This does not constitute an "ill-conceived" action. See <u>Hoagland v. AmeriHealth Adm'rs</u>, No. 05-0099, 2006 WL 538190, at *3 (M.D. Pa. Mar. 2, 2006) (holding the relative merits of the parties did not favor an award of fees where the losing party's argument was not "ill-conceived" and the court did not "ascribe bad faith or culpability").

Adjudging the weight of the <u>Ursic</u> factors, the Court determines that attorneys' fees are unwarranted in this case. Plaintiff did not dispute the denial of benefits in bad faith, or advance "ill-conceived" arguments. This garden variety ERISA dispute in no way rises to the level of an "exceptional circumstance" warranting an award of attorneys' fees for Defendant. See <u>McPherson</u>, 33 F.3d at 254.

<u>CONCLUSION</u>

For the reasons given above, and for good cause shown,

It is on this 1st day of December 2006,

**ORDERED** that Defendant's motion for Summary Judgment [9] is **Granted**; and

**ORDERED** that Defendant's request for attorneys' fees is **Denied**; and it further

**ORDERED** that this case is **Closed**.

<pre>                                        s/ Anne E. Thompson
                                        ANNE E. THOMPSON, U.S.D.J.</pre>